# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:10-cv-109-W

| | | |
|---|---|---|
| **RAYMOND A. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **HENDRICK AUTOMOTIVE GROUP,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment with respect to Plaintiff's claims and to Defendant's counterclaim (Doc. No. 89) pursuant to Rule 56 of the Federal Rules of Civil Procedure and Defendant's Motion to Dismiss and for Monetary Sanctions (Doc. No. 80) pursuant to the Federal Rules of Civil Procedure 41(b) and 30(g) respectively. For the reasons set forth, the Court GRANTS Defendant's Motion for Summary Judgment as to all of Plaintiff's claims and GRANTS in part Defendant's Motion for Summary Judgment as to Defendant's counterclaim to the extent that Plaintiff is liable for breach of contract and Defendant is entitled to damages in the amount of $20,000. The Court DENIES in part Defendant's Motion to the extent that Defendant is entitled to further damages. The Court DENIES Defendant's Motion to Dismiss as moot and DENIES Defendant's Motion for Monetary Sanctions.

## I. BACKGROUND

On March 11, 2010, Plaintiff filed the instant action against Defendant asserting claims related to his employment with Defendant where he was briefly employed as a car salesman. Prior to filing this action, Plaintiff previously entered into two separate settlement agreements with

Defendant, each accompanied by a general release of all claims against Defendant associated to his employment.

A.    Settlement Agreement I ("SA I") and General Release I ("GR I")

Plaintiff filed multiple discrimination charges against Defendant with the Equal Employment Opportunity Commission ("EEOC") on January 8, 2008 ("EEOC I"). In response, the parties entered into SA I, and on February 15, 2008, in consideration for $20,000, Plaintiff executed GR I thereby releasing all claims against Defendant. Despite entering into SA I and GR I, Plaintiff persisted to file a subsequent charge with the EEOC on June 11, 2008 ("EEOC II").

B.    Settlement Agreement II ("SA II") and General Release II ("GR II")

EEOC II solely alleged that Defendant had retaliated against Plaintiff by breaching the confidentiality provisions within SA I and GR I. This allegation of contractual breach fell outside the scope of EEOC's jurisdiction. Moreover, Plaintiff was no longer employed with Defendant at the time of the alleged retaliation. Even so, Defendant agreed to offer $3,000 consideration to Plaintiff for a second release. GR II was executed on September 12, 2008, and expressly stated that GR I remained valid and enforceable. However, on September 19, 2008, Plaintiff wrote Defendant's counsel expressing his intention to rescind GR II. Thereafter, Defendant requested that Plaintiff return the consideration and further expressed that a failure to do so would ratify the agreement. Plaintiff did not return the proceeds of GR II.

C.    Third EEOC Charge ("EEOC III") and the Instant Action

On June 10, 2009, Plaintiff filed yet another claim against Defendant with the EEOC charging age discrimination. Thereafter, on December 9, 2009, Plaintiff received a "right to sue" letter from the EEOC. Now, Plaintiff's Complaint alleges that Defendant breached the contracts and further alleges the following claims: (1) age discrimination; (2) race discrimination and retaliation;

(3) retaliatory termination; (4) violations pertaining to payment of wages; (5) retaliation for filing a workers' compensation injury; (6) being forced to take unwanted medical leave; (7) sexual harassment; (8) hostile work environment; and (9) unfair and deceptive trade practices.

Defendant filed a motion to dismiss pursuant to Rule 12(b)(6), and on September 10, 2010, this Court denied in part and granted in part Defendant's motion. The Court's order permitted Plaintiff's breach of contract claims to advance to summary judgment and also allowed the remaining claims to advance to the extent that Plaintiff could allege misconduct occurring between "February 12, 2008, and February 15, 2008."[1]

Plaintiff's surviving breach of contract claims allege that Defendant breached all of the aforementioned contracts in two ways: (1) Defendant's agents and/or employees informed other car-dealers of Plaintiff's litigious history and revealed information regarding the contracts to the same in violation of confidentiality provisions within the contracts, and (2) Defendant contested Plaintiff's claim for unemployment benefits in violation of Paragraph 3(b) of GR I and/or GR II. Defendant filed a counterclaim against Plaintiff alleging breach of contract of all of the contracts on the basis that Defendant's subsequent EEOC filing(s) as well as claims raised in this action constitute an express breach of contract. On April 14, 2011, this Court presided over the summary judgment hearing and heard oral argument on the issues.[2] At the conclusion of the proceeding the Court issued an oral order based on the reasons set forth.

---

[1] While the order intended to permit claims to the extent that they arose between the date that Plaintiff entered into GR I and correspondingly resigned through the date of Plaintiff's last paycheck, the order incorrectly transcribed the relevant dates. The actual time period of import was February 15, 2008, to February 21, 2008. The Court dealt with the issue at oral argument, and both parties acknowledged that they understood those to be the actual dates at issue. Plaintiff, in fact, was permitted to and did make arguments that violations occurred during that time period.

[2] The Court permitted the *pro se* Plaintiff well over an hour of time at oral argument to present evidence and make arguments supporting his case.

## II.  STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (2011):  "The Court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that could lead to judgment in favor of one party or another.  <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 244, 248 (1986).  When the movant supports its motion for summary judgment by affidavits, the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine dispute for trial.  <u>Id</u>. at 249-50.

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion.  <u>Id</u>. at 255; <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir, 1990).  Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . . " <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotations omitted).

## III.  ANALYSIS

A.      Plaintiff's Surviving Claims Limited to February 15, 2008 - February 21, 2008

To the extent this Court permitted Plaintiff's original claims to proceed to this stage (albeit limited to  alleged misconduct that occurred between the date of Plaintiff's resignation and receipt of his final paycheck), Plaintiff failed to make a single plausible argument or provide any evidence related to these claims.  Thus, upon revisiting these claims, Defendant is entitled to summary judgment with respect to the following claims: (1) race discrimination and retaliation; (2) retaliatory termination in violation of N.C. Gen. Stat. § 95-241; (3) alleged violations of N.C. Gen. Stat. § 95-25.6, pertaining to payment of wages; (4) retaliation for filing a workers' compensation claim; (5)

being forced to take unwanted medical leave; (6) sexual harassment; (7) hostile work environment; and (8) unfair and deceptive trade practices. The Court is compelled to deal with Plaintiff's age discrimination claim separately since GR I did not contractually bar Plaintiff from raising such a claim if the discrimination occurred after execution of GR I.[3]

B.      Plaintiff's Age Discrimination Claim

As to Plaintiff's age discrimination claim, Plaintiff wholly failed to state any viable case under the Age Discrimination in Employment Act ("ADEA") for two substantial reasons: (1) GR I barred Plaintiff from bringing an ADEA action that occurred prior to his entering into that agreement and since Plaintiff resigned his employment on the same day, he was unable to meet the essential element that Defendant was his employer at the time of the alleged discrimination; and (2) Plaintiff failed to timely file an age discrimination charge with the EEOC as required by 29 U.S.C. § 626(d), and thus, his claim was procedurally time barred. Moreover, Plaintiff did not make an effort to offer any evidence or submit argument(s) that connected his allegations of discrimination to his age.[4]  The absence of such an effort concerns this Court and cautions the Court to consider whether the claim was alleged in bad faith and without merit. For these reasons, the Court finds that the complete record shows that no genuine dispute as to material facts exist regarding this claim. Thus, Defendant is entitled to summary judgment with respect to Plaintiff's age discrimination claim.

C.      Plaintiff's Breach of Contract Claims

---

[3] Though not contractually barred, Plaintiff was no longer employed by Defendant after, at the latest, February 21, 2008. Nonetheless the Court permitted oral argument dedicated to Plaintiff's age discrimination claim which he conceded occurred well after his resignation.

[4] Plaintiff only stated that his age qualified him as a member of the protected class covered by the ADEA.

Next, Plaintiff's breach of contract claims stem from the allegation that Defendant breached GR I and/or SA I, as well as GR II and/or SA II.[5] A breach of settlement agreement is analyzed under basic contract law principles derived from the state law that governs the contract. Webster v. Rumsfeld, 156 Fed.Appx. 571, 577 (4th Cir. 2005). Thus, North Carolina law is applicable. To establish such a claim, Plaintiff must show the existence of a valid contract and a material breach of the terms of that contract. Simontacchi v. Invensys Inc., No. 3:05cv283, 2008 WL 141905, at *17 (W.D.N.C. Jan. 11, 2008) (citing Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000)).

1. Confidentiality

First, Plaintiff asserts that Defendant breached the contracts' confidentiality provisions. However, Defendant, as the movant, properly supported its motion by affidavits and other evidence aptly capable of convincing a reasonable jury that Defendant complied with its confidentiality obligations under all of the contracts. Defendant submitted affidavits from every accused individual and each denied Plaintiff's accusations that they breached the contracts in any way. Meanwhile, Plaintiff rested on mere allegations and hearsay evidence incapable of setting forth specific facts that show a genuine issue for trial. Plaintiff did not depose any of Defendant's affiants, nor did he produce a single corroborating witness to support his accusations. As such, the Court finds that the complete record shows that no genuine dispute exists as to this claim.

2. Unemployment Benefits

Second, Plaintiff asserts that Defendant breached the contracts by contesting his unemployment benefits. In this instance, Plaintiff attempts to support the claim by offering a document that he purports to be the notes of ESC Adjudicator, Laura Gray ("Gray's Notes"), who

---

[5] At the same time, Plaintiff inconsistently claims that he validly rescinded SA II / GR II.

apparently interviewed several actors relevant to this action including Tom Fulp, Defendant's Human Resources Director. According to Plaintiff, Gray's Notes state, in pertinent part, that Fulp stated over an apparent telephone interview, "We are contesting benefits."

Despite the fact that Defendant subpoenaed all ESC records relevant to Plaintiff, Defendant was unable to find any record of Gray's Notes in Plaintiff's ESC file. Defendant also went as far as to subpoena Stan Linzey, Assistant Director of Unemployment Insurance Benefits, who declared by sworn affidavit that the ESC had "provided all records in its custody regarding the unemployment insurance benefits claim of [Plaintiff]." Plaintiff did not offer any affiant(s) or subpoena any witness(es) to authenticate Gray's Notes. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (citing Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550-51 (9th Cir. 1990); Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985)). "To be admissible at the summary judgment stage, documents must be [timely] authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." Orsi, 999 F.2d at 92 (4th Cir. 1993). Thus, in the present case, the Court cannot consider Gray's Notes as it is unable to ascertain whether the document is even what Plaintiff purports it to be.[6] Moreover, the questionable nature of Gray's Notes and the mystery surrounding the document's absence from Plaintiff's ESC file combined with Plaintiff's overall lack of effort and/or inability to legitimize his lone piece of evidence connecting Defendant to a breach once again raises a red flag for this Court as to Plaintiff's motives. In the least, the authenticity of Gray's Notes is highly questionable.

---

[6] At oral argument the Court spent a considerable amount of time dedicated to the origin of Gray's Notes. Recognizing the potential significance of the document, the Court permitted Plaintiff opportunity (beyond his submissions) to provide any sort of authentication. Yet, Plaintiff resorted to the flawed rationalization that because Defendant had not deposed Gray the document must be authentic.

The submission of Gray's Notes notwithstanding, Plaintiff offered no evidence that Defendant ever contested his unemployment benefits. Further harming Plaintiff's claim, Defendant submitted authenticated letters that Plaintiff drafted and sent to both the ESC and Defendant's counsel indicating that he refused unemployment benefits for a brief period ranging from November 16, 2008, through December 13, 2008, because he was under the care of a doctor and receiving workers' compensation benefits. As it turns out, this was the only relevant period in which Plaintiff did not collect unemployment benefits, as ESC records indicate that Plaintiff received benefits for a 15–month period beginning on December 29, 2008. Again, and in consideration of this telling evidence, the Court questions Plaintiff's motives in making the connected claim when the entire record demonstrates that Plaintiff suffered no injury whatsoever, and especially not at the hands of Defendant. As such, the Court finds that Plaintiff did not create a genuine dispute of material fact capable of convincing any jury that Defendant breached any of the terms in any of the contracts associated with its obligation(s) to not contest Plaintiff's unemployment benefits. For the forging reasons, Defendant is entitled to summary judgment with respect to Plaintiff's breach of contract claims.

D.     Defendant's Breach of Contract Counterclaims

Turning to Defendant's counterclaim for breach of contract, the Court relies on the analysis above that Plaintiff entered into two settlement agreements and two general releases with Defendant and that Defendant complied with the terms of each contract. To establish a breach, Defendant must show the existence of a valid contract and a breach of the terms of that contract. <u>Simotacchi</u>, 2008 WL 141905 at *17.

1.     General Release I

GR I provided that Plaintiff release Defendant from "any and all claims, charges, lawsuits, and causes of action of any nature that he now or may have against them." Yet, despite entering this contract, Plaintiff filed two future EEOC charges and the instant lawsuit culminating in what amounts to him re-asserting many of his initial allegations that spawned SA I and GR I. Plaintiff's actions, on their face, expressly breach GR I. See VF Jeanswear Ltd. Partnership v. Molina, 320 F.Supp.2d 412, 418-22 (M.D.N.C. 2004) (filing suit after releasing such claims constitutes an express breach of contract).

Plaintiff's opposition to Defendant's counterclaim rests entirely on the flawed premise that Defendant breached GR I. Thus, according to Plaintiff, he was no longer bound by the terms of that contract, therefore freeing him to file additional legal complaints related to his employment with Defendant. As the above analysis reveals, however, Plaintiff did not offer any evidence capable of establishing that GR I was breached by Defendant and was no longer enforceable. The record wholly supports the validity and enforceability of GR I up until Plaintiff committed a breach.

2.      General Release II

GR II provides the exact same protection(s) for Defendant against claims by Plaintiff as does GR I but relates to a subsequent EEOC charge – EEOC II. GR II contains provisions that permit Plaintiff to revoke the agreement within seven days of execution pursuant to requirements under the Older Workers Benefit Protection Act ("OWBPA"). In accordance with this language, Plaintiff validly revoked the agreement within the allotted seven-day period, as it related to the release of any ADEA claims. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427-28 (1998). Plaintiff correspondingly retained the consideration paid to him for entering into GR II, also a lawful action according to Oubre, to the extent that such consideration relates to ADEA claims. However, Plaintiff's prospects dampen there, as GR II released Defendant of *all claims*, not just ADEA claims.

As such, Defendant correctly argues that by retaining the consideration provided to him, Plaintiff legally ratified the release of all other claims associated with GR II. Honeycutt v. Honeycutt, 701 S.E.2d 689, 697 (N.C. App. 2010). It follows then, that Plaintiff's actions of filing EEOC III and the instant lawsuit expressly breach GR II. Therefore, the Court finds that no genuine dispute of material fact exists because Plaintiff expressly breached both GR I and GR II by filing subsequent charges with the EEOC and filing this action. For these reasons, Defendant is entitled to summary judgment with respect to its counterclaim as to Plaintiff's liability for breaching all contracts.

E.    Damages

As a matter of law, Defendant is entitled to damages with respect to Plaintiff's breach of GR I in the amount of $20,000, the consideration provided to him in exchange for his entering the contract and agreeing to release all claims against Defendant. See Bell-Atlantic-Washington DC v. Zaidi, 10 F.Supp.2d 575, 576-78 (E.D. Va. 1997) (ordering *pro se* party to repay consideration paid to him for executing a settlement agreement that the party subsequently breached). At least one other court in this district has dealt with the issue of damages relative to a breach of a general release, reasoning that the non-breaching party was not entitled to full recoupment of consideration because the party received some benefit from the bargain, namely the dismissal of the alleged claims. Simontacchi v. Invensys, Inc., 3:05cv283, 2009 WL 426466, at *10 (W.D.N.C. Feb. 19, 2009) (awarding attorney fees incurred in defending the relinquished claims as opposed to the settlement payment). But, this case is distinguishable from the circumstances in Simontacchi. Here, any benefit that Defendant received from the dismissal of relinquished claims is illusory, for Defendant incurred litigation costs defending the released claims well in excess of the consideration

they paid.[7] While awarding damages in the amount of costs necessarily incurred to mount a defense against released claims might be an adequate legal remedy, Defendant did not offer affidavits attesting to defense costs. Thus, distributing such an award would exceed the scope of this Court's inquiry at summary judgment. The Court is satisfied that defense costs were at least that of the consideration paid to Plaintiff for releasing all claims, and as such, there is no genuine dispute of material fact indicating that Defendant did not lose the entire amount of consideration – $20,000. The Court declines to award damages exceeding the amount of consideration that Defendant lost.

Next, having decided that Plaintiff validly revoked GR II as it applied to ADEA claims but ratified the remaining portions of the contract, factual questions exist as to the proper award of damages in that respect. The Court cannot now weigh the value of consideration provided to Plaintiff and make a factual judgment as to each released claim's value. It is not for this Court to assign value to the benefits bargained for by Plaintiff and Defendant during the course of their negotiations that resulted in the execution of GR II. As such, to the extent that Defendant is entitled to damages associated with Plaintiff's breach of GR II, the Court finds that a genuine dispute as to material facts exist that must be answered by a jury. Thus, Defendant is entitled to summary judgment with respect to Plaintiff's liability for breaching GR II but not entitled to summary judgment with respect to an award for any damages associated with that liability.

F.      Defendant's Other Motions

---

[7] At oral argument Defense counsel qualified a response to the Court that Defendant had incurred approximately $75,000 in litigation costs surrounding Plaintiff's lawsuit.

With respect to Defendant's Motion to Dismiss (Doc. No. 80), the Court issued its ruling at the close of the hearing with deference toward summary judgment ajudication. Thus, in accordance with the above findings and dispositions, Defendant's Motion to Dismiss is DENIED as moot.

As to the Motion for Monetary Sanctions (Doc. No. 80), Defendant asserts that the Court should award Defendant costs and attorney fees pursuant to Fed. R. Civ. P. 30(g) because Plaintiff failed to attend and proceed with scheduled depositions of defense witnesses. Under Rule 30(g), a party may recover reasonable expenses for attending a deposition, including attorney fees, if the noticing party failed to carry out the deposition. The rule has been interpreted to extend to instances in which the noticing party fails to deliver timely and sufficient notice of cancellation. Here, the facts indicate that Plaintiff had scheduled certain depositions of defense witnesses to take place in Gastonia, North Carolina, beginning on January 20, 2011. However, sometime on January 19, 2011, Plaintiff filed a motion to put those depositions on hold, and apparently requested a telephone conference with the Magistrate Judge and Defendant to settle perceived discovery issues. The court granted Plaintiff's request, and a conference ensued the evening of January 19, 2011, from 5:00 to 6:00 p.m. During that conference, the Magistrate Judge encouraged Plaintiff to proceed with the scheduled depositions because there were no issues to be resolved and Defendant was ready to proceed. Defendant's counsel had, in fact, already traveled to Charlotte and spent the day preparing the witnesses for their testimony. Despite the Magistrate Judge's prodding, Plaintiff was insistent that he had cancelled the depositions. Thus, by 6:00 p.m. on January 19, 2011, Defendant was officially noticed that the depositions set for the following day were cancelled. As such, the Magistrate Judge entered an order the following day denying Plaintiff's motion to put the depositions on hold as moot.

Because Plaintiff's cancellation did not occur until after Defendant's counsel had traveled from Raleigh to Charlotte and spent the day preparing the witnesses, the Court is sympathetic to Defendant's arguments. However, Rule 30(g) provides relief to a party who *attends a deposition* if the noticing party failed to proceed with the deposition. Here, Defendant offered no evidence that any of the witnesses or Defendant's counsel attended the scheduled depositions only to find out upon arrival of the cancellation. However late and unprofessional the cancellation may have been, Defendant's counsel certainly had time to alert any witnesses not to attend. Defendant cites to case law that broadly construes Rule 30(g) to apply to situations where the noticing party fails to properly provide notice of cancellation or cancels on short notice. However, these cases are distinguishable from the current facts in that those parties actually attended the depositions because the notice was so insufficient or so late that the party had already arrived at the deposition. Thus, while the Court considers it unfair that Defendant expended its resources in preparation for depositions that never occurred, the language of Rule 30(g) is clear and unambiguous in that it provides no relief in this instance. As such, Defendant's Motion pursuant to Rule 30(g) is DENIED.

G.      Rule 11

Despite denying the previous motions, the Court discourages Plaintiff's conduct that prompted those motions. In what has become a reoccurring theme throughout this litigation (and this Order), the Court again pauses to reflect on the nature of Plaintiff's litigious conduct. While neither Rule 41(b) nor Rule 30(g) provides any relief to Defendant, or triggers sanctioning Plaintiff, the Court now takes occasion to briefly expand on its concerns that Plaintiff has acted in bad faith by bringing a frivolous lawsuit and acted in bad faith throughout the course of this litigation.[8]

---

[8] The Court nearly sanctioned Plaintiff at oral argument for repeatedly failing to answer the Court's questions in a forthright manner.

Defendant, in fact, argued by motion that this Court should award Defendant costs under its inherent power to award sanctions citing case law connected to Rule 11(b).[9]

The Court has fully considered issuing a nominal sanction against Plaintiff. The instant action is representative of those situations where an overly litigious complainant takes to the courts without a viable case.[10] In such instances, not only is the Defendant harmed, but so is the federal taxpayer. Rule 11 operates to deter such conduct. However, the Court has considered Plaintiff's *pro se* status as a mitigating factor, particularly because the Court believes that Plaintiff does not fully understand the nuances of the law, nor the consequential effects of creating this litigation.[11] While an unrepresented party should not have free reign to behave recklessly without consequence, because Defendant was able to succeed on the counterclaim, and in combination with the Court's expressions of concern, this Court hopes that Plaintiff will now grasp the unfortunate impact of bringing such a baseless action. Accordingly, the Court strongly cautions Plaintiff that the Court will not be so lenient in subsequent cases.

## IV. CONCLUSION

For the forgoing reasons, this Court concludes that Defendant's Motion for Summary Judgment with respect to all of Plaintiff's claims is GRANTED. Defendant's Motion for Summary

---

[9] Defendant's motion was not properly filed, as a motion for sanctions must be made separately from any other motion and must describe the specific improper conduct. Fed. R. Civ. P. 11(c)(2).

[10] By the Court's count, Plaintiff's deposition revealed that he has either filed EEOC charges and/or lawsuits against six former car-dealer employers and as many as three malpractice actions against attorneys who represented him in the former proceedings.

[11] The Court also considered Plaintiff's insolvency as a deterring factor.

Judgment with respect to Defendant's counterclaim is GRANTED in part as to Plaintiff's liability and to the extent that Defendant is entitled to damages in the amount of $20,000 and DENIED in part as to whether Defendant is entitled to further damages described herein. Defendant's Motion to Dismiss is DENIED as moot, and Defendant's Motion for Monetary Sanctions is DENIED.

IT IS SO ORDERED.

Signed: May 3, 2011

Frank D. Whitney
United States District Judge